UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**VERONICA CORDERO ROMERO**,

                Plaintiff,

v.

**NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY**,

                Defendant.

**DECISION AND ORDER**
1:17-CV-00834-RJA

---

## INTRODUCTION

Plaintiff Veronica Cordero Romero ("Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of a final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her application for Social Security Supplemental Income benefits under Title XVI of the Act. (Dkt. 1). The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkts. 10 and 11). The Court assumes the parties' close familiarity with the procedural history, administrative record, and all issues before the Court. The Court has carefully considered the entire record, and for the reasons set forth below, the Court **GRANTS** the Plaintiff's motion for remand and **DENIES** the Commissioner's motion.

## DISCUSSION

This Court reviews the record to determine whether the Commissioner applied the correct legal standard and whether substantial evidence supports the Commissioner's final decision. 42 U.S.C. § 405(g). Plaintiff contends the ALJ erred in failing to call a Vocational Expert ("VE") to testify; erred in not properly considering obesity when formulating the residual functioning capacity ("RFC"); and erred in failing to consider Plaintiff's impairments of neuropathy and sleep apnea. (Dkt. 10 at 19-24). The Court finds the ALJ erred in failing to call a VE to testify regarding Plaintiff's mental health-related

limitations but not for her inability to communicate in English. The Court also finds the ALJ did not properly consider obesity at steps 4 and 5 of the required sequential analysis, and therefore, this matter is remanded. The Court instructs the ALJ to call a VE to specifically testify regarding Plaintiff's mental health-related limitations and ability to perform unskilled light work on a regular and continuing basis. The Court does not reach the remaining issue regarding neuropathy and sleep apnea; but notes, however, that all severe and non-severe impairments should be properly considered on remand.

<u>Plaintiff's argument that the ALJ erred in not calling a VE to testify</u>

Plaintiff argues that the ALJ should have called a VE to testify in this matter because of her inability to communicate in English and because Plaintiff has non-exertional impairments related to her mental health which preclude the ALJ's sole reliance on the Grids to determine disability. The Court agrees, in part.

In the application of the Medical-Vocational Rule ("the Grids") at step 5 of the analysis, the ALJ first considered Plaintiff's "age, education, work experience, and residual functional capacity." (Tr. 30). The ALJ found that: (1) Plaintiff was a "younger individual"; (2) Plaintiff was "unable to communicate in English," which was the equivalent of being "illiterate"; and (3) Plaintiff's additional limitations have "little or no effect" on the occupational base of unskilled light work. *Id*. Based on these factual findings, the ALJ concluded that the Grids Rule 202.16 directed a finding that Plaintiff was "not disabled." *Id*.

*Plaintiff's English language ability*

Plaintiff argues that sole use of the Grids to make a disability determination in Plaintiff's case was inappropriate because Plaintiff cannot communicate in English—and this required the ALJ to call a VE to testify. (Dkt. 10 at 19). Plaintiff contends that this district recently held in *Rosario v. Colvin* that the requirement of VE testimony is triggered any time the plaintiff's English language ability is at issue; however, this is an incorrect reading of that case. In that case, a VE *was* called to testify. *Rosario* simply emphasized— in its analysis that the ALJ's RFC determination was not supported by substantial evidence—that ability to communicate in English must be taken into consideration at step

five. *Rosario v. Colvin*, 13-CV-6623 CJS, 2017 WL 655268 (W.D.N.Y. Feb. 17, 2017). *Rosario* does not hold that a VE must be called in any matter where a plaintiff's English language ability is at issue. In any event, the use of the Grids already takes English language ability into account. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2, sec. 200(h)(2) (specifically indicating that a younger individual who is illiterate or unable to communicate in English with unskilled or no previous work experience would not be considered disabled under the Act).

Further, Plaintiff's argument that a VE needed to be called for this purpose is unpersuasive in another respect because Plaintiff relies on what is clearly a typographical error on the ALJ's part. (Dkt. 10 at 19-20). The ALJ wrote Plaintiff was "illiterate and able to communicate in English." (Tr. 29). But, because the ALJ clearly relied on Medical-Vocational Rule 202.16 from the Grids, which specifically factors in Plaintiff's *inability* to communicate in English, Plaintiff's argument that the ALJ found her *able* to communicate in English is erroneous; the ALJ never found that Plaintiff was able to communicate in English, and this fault on the ALJ's part was a clear typographical error.

*Plaintiff's non-exertional limitations*

The ALJ found Plaintiff has the severe mental impairments of "adjustment disorder with depressed mood, and anxiety." (Tr. 22). Additionally, although the ALJ found that Plaintiff had "moderate" limitations in her concentration, persistence, and pace (Tr. 24), he also found these mental limitations to be negligible on Plaintiff's ability to perform work at her RFC. (Tr. 30) ("However, the additional limitations have little or no effect on the occupational base of unskilled light work. The claimant retains the ability to meet the basic mental demands of unskilled, remunerative, competitive work on a sustained basis . . .."). And therefore, the ALJ decided he could solely rely on the Grids for a disability determination.

Generally, the ALJ cannot solely rely on the Grids if a non-exertional impairment (i.e. impairments that have no effect on a person's strength) "has any more than a 'negligible' impact on the claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert." *Stephens v. Colvin*, 200 F.Supp.3d 349, 362 (N.D.N.Y. Aug. 2, 2016) (citing *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013)).

"A non-exertional impairment is non-negligible 'when it . . . so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Stephens*, 200 F.Supp.3d at 362 (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)). However, mental limitations are considered non-exertional for purposes of the fifth step in the disability analysis (*see* 20 C.F.R. § 416.969a(c)(1)(i)-(ii)), and, if present, preclude the ALJ's sole reliance on the Grids to conclude whether the applicant is disabled. *Lugo v. Barnhart*, No. 04-CIV-1064(JSR)(MHD), 2008 WL 515927, at *19 (S.D.N.Y. Feb. 8, 2008), report and recommendation adopted, No. 04-CIV-1064 (JSR), 2008 WL 516796 (S.D.N.Y. Feb. 27, 2008). Therefore, a VE was required to testify regarding Plaintiff's mental impairments on her ability to perform at her RFC—regardless of whether the ALJ found these mental limitations to be negligible.

The record indeed shows that Plaintiff's mental health-related limitations impact her functioning in several ways. As described above, the ALJ found that Plaintiff had "moderate" limitations in her concentration, persistence, and pace. (Tr. 24). Further, in January of 2014, Plaintiff was assessed by psychiatric clinical examiner Dr. Kristina Luna, Psy.D. Dr. Luna's opinion was afforded "great weight" (except one portion of her opinion indicating that Plaintiff exhibited a marked limitation in ability to keep attention and concentrate) and Dr. Luna concluded that Plaintiff's manner of relating and overall social skills were "poor." (Tr. 227). Dr. Luna noted that Plaintiff had a very difficult time answering direct questions and that she had a moderately limited ability to learn new skills and perform complex tasks independently. *Id.*

In October of 2015, Plaintiff was also assessed by Annmarie Kenney, NP,[1] whose conclusions coincide with those of Dr. Luna in that Plaintiff's mental health symptoms were moderately to severely impacting her ability to function. Further, Plaintiff testified that ever since her heart surgery she has experienced depression and trouble falling asleep due to her fear that she still has issues with her heart. *See* (Tr. 52-55). In sum, the record contains evidence from several sources on how non-exertional mental limitations

---

[1] Although Ms. Kenney is a nurse practitioner and not considered a "treating physician" for the purposes of Social Security disability, the ALJ considered and afforded "great weight" to a different nurse practitioner, Ms. Arnet-June, in this case. *See* (Tr. 27). No explanation was given as to why the ALJ gave weight to one nurse practitioner and not the other.

4

may impact Plaintiff's ability to function. To conclude that these mental-health related limitations conclusively do not erode her occupational base would be speculation and lay opinion. In this case, by neglecting to call a vocational expert to testify on Plaintiff's mental health limitations, "the record is incomplete and further findings are appropriate." *Butts v. Barnhart*, 388 F.3d 377, 386-87 (2d Cir. 2004) (internal quotation marks omitted).

*Plaintiff's argument that the ALJ erred in failing to properly consider her obesity*

Plaintiff contends that the ALJ did not properly consider the effect of her severe obesity because he failed to evaluate the effects of obesity at steps 4 and 5 of the required sequential analysis. (Dkt. 10 at 22). The Court finds that the ALJ failed to address Plaintiff's ability to perform unskilled light work on a regular and continuing basis in light of her extreme obesity, as no reference to durational limitations are present in the record or incorporated within the RFC, rendering it unclear if the ALJ's finding is based on substantial evidence.

As stated above, the ALJ found Plaintiff to have the severe impairment of obesity. (Tr. 22). Plaintiff's Body Mass Index during the period of review was, at its lowest, 46, making her "level" of obesity "extreme." (Tr. 219-222, 216-218). SSR 02–1p: Policy Interpretation Ruling, Titles II and XVI: Evaluation of Obesity, 67 Fed. Reg. 57859 (Sept. 12, 2002) (hereinafter "SSR 02–1") provides that obesity must be evaluated in assessing residual functional capacity in adults when obesity is identified as a medically determinable impairment, and *requires* residual functional capacity assessments to consider "an individual's maximum remaining ability to do sustained work activities in an ordinary work setting *on a regular and continuing basis.*" *Id.* (emphasis added). A regular and continuing basis is defined as 8 hours a day, for 5 days a week, or an equivalent work schedule.[2] SSR 96–8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). SSR 02-1p further

---

[2] "The ability to work 8 hours a day for 5 days a week is not always required when evaluating an individual's ability to do past relevant work at step 4 of the sequential evaluation process. Part-time work that was substantial gainful activity, performed within the past 15 years, and lasted long enough for the person to learn to do it constitutes past relevant work, and an individual who retains the RFC to perform such work must be found not disabled." SSR 96-8p at n.2. This consideration does not apply here because the ALJ found Plaintiff did not have any past relevant work considered to be substantial gainful activity. (Tr. 29).

5

states that "in cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity."

Additionally, "[t]his may be particularly true in cases involving sleep apnea." SSR 02–1p. While the Court finds that, generally, the ALJ did consider Plaintiff's obesity, the Court sees no indication that the ALJ considered Plaintiff's ability to perform unskilled light work "on a regular and continuing basis." Here, the record evidence indicates Plaintiff has sleep apnea and that it causes Plaintiff's fatigue (Tr. 213-215, 219-222), though the ALJ found it to be non-severe. Sleep apnea in conjunction with Plaintiff's extreme obesity may very well exacerbate Plaintiff's already diminished concentration or otherwise inhibit Plaintiff from working "on a regular and continuing basis" at her RFC. The ALJ found that Plaintiff had a "moderate" limitation in concentration, persistence, and pace. (Tr. 28). Further, as stated above, Plaintiff testified that ever since her heart surgery she has experienced depression and trouble falling asleep due to her fear that she still has issues with her heart. *See* (Tr. 52-55). Again, stated above, Dr. Luna, whom the ALJ gave "great weight",[3] noted that Plaintiff had a very difficult time answering direct questions and that she had a moderately limited ability to learn new skills and perform complex tasks independently. (Tr. 227).

The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.1984); *see also Hamlin v. Colvin*, No. 6:13-CV-0857(GTS), 2014 WL 4669244, at *6 (N.D.N.Y. Sept. 18, 2014). The Court cannot discern from the record whether the ALJ sufficiently considered Plaintiff's obesity as it relates to her ability to work on a regular and continuing basis. Therefore, the ALJ failed to sufficiently consider Plaintiff's obesity at steps 4 and 5. The Court finds that testimony from a VE would be appropriate in this case to assess Plaintiff's ability to stay on task for a normal workday.

---

[3] Except that Dr. Luna found "marked" deficits for attention and concentration, but the ALJ discounted this portion of the opinion. (Tr. 24).

## CONCLUSION

This matter is remanded for further consideration of Plaintiff's mental health-related limitations with the consultation of a VE. Additionally, this matter is remanded for further consideration of Plaintiff's obesity as it relates to her ability to perform unskilled light work on a regular and continuing basis, which may also require the consultation of a VE. The ALJ should provide an explanation of the limiting effects, if any, of Plaintiff's severe obesity as it relates to her ability to stay on task during a normal workday, as required by SSR 02-1p. Therefore, Plaintiff's motion for remand (Dkt. 10) is granted. The Commissioner's motion for judgment on the pleadings (Dkt. 11) is denied.

**IT IS SO ORDERED.**

      __s/Richard J. Arcara_____
**HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT**

**Dated:** May 13, 2019